NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LINDA GOODFRIEND CRIDER,**

        **Plaintiff,**

**v.**                                        **Case No. 6:17-CV-1076-ORL-41KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Linda Goodfriend Crider, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 11, 13, and the parties' Joint Memorandum, Doc. No. 15.[1]

## PROCEDURAL HISTORY.

In 2014, Crider filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.* She alleged that she became

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 14. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Revised Scheduling Order. *Id.* at 4.

disabled on March 17, 2012. R. 151. After this application was denied originally and on reconsideration, Crider asked for a hearing before an Administrative Law Judge ("ALJ"). R. 108. An ALJ held a hearing on January 27, 2016. Crider, accompanied by a lawyer, and a vocational expert ("VE") testified at the hearing. R. 35-66.

After considering the hearing testimony and the evidence in the record, the ALJ found that Crider was insured under OASDI through March 31, 2016. The ALJ concluded that although Crider worked after the alleged disability onset date, she had not engaged in substantial gainful activity. R. 22.

The ALJ found that Crider had the following severe impairments: fracture of the left calcaneus (a bone in the foot); neuropathy; right hip arthropathy; diabetes mellitus; hypertension; disorder of the spine; and, obesity. *Id.* The ALJ concluded that Crider did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 24.

The ALJ found that Crider had the residual functional capacity ("RFC") to perform light work with the following limitations:

> The claimant can sit up to 6 hours per day, up to 1 hour at a time; stand and/or walk up to 2 hours in an 8 hour day, up to 15 minutes at a time; lift up to 20 pounds occasionally and 10 pounds frequently; occasional bending or stooping; no crawling; occasional stairs; no ladders, ropes, or scaffolds; no crouching; occasional kneeling; occasional reaching above shoulder level; and no work around unprotected heights.

R. 25. In making this assessment, the ALJ gave some weight to the functional capacity assessment prepared by Alfonza McCollum, M.D. R. 368-69.

After considering the testimony of the VE, the ALJ found that Crider was able to perform her past relevant work as an administrative clerk as generally performed and manager, recreational

establishment as actually and generally performed. R. 29. Therefore, the ALJ found that Crider was not disabled. R. 29.

Crider requested review of the ALJ's decision by the Appeals Council and provided an April 6, 2016 medical statement from Dr. McCollum. R. 5, 14. On April 18, 2017, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

Crider now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Crider having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference. Accordingly, I will summarize only facts pertinent to the issues raised to protect Crider's privacy to the extent possible.

Crider was born in 1961. R. 151. She completed school through the tenth grade. R. 177. She previously worked in her husband's business, Shorty Crider Roofing, doing office work and helping with estimates. Sometimes she worked on top of a roof, and she lifted up to fifty pounds. R. 42-43. She also owned a fitness center in which she signed up members, collected money and

instructed how to use the equipment. R. 45-46. In that job, she could sit or stand, and she did no lifting or crouching. R. 46-47, 62. After the alleged disability onset date, she worked as a water aerobics instructor for six to ten hours a week. R. 40-41.

At the ALJ's hearing, Crider testified that she shattered her left heel in 2010, which was repaired with surgery. She still had swelling and tendon irritation with constant pain. R. 47-48. She also broke her femur, which was repaired with surgery. R. 49. She had ongoing pain in her left hip. R. 49-50. She also had low back and sciatic pain after a fall resulting in a compression fracture. R. 50. Due to diabetes, she had numbness and pain in both feet. R. 51. Due to herniated discs in her neck, she had some neck and shoulder discomfort. R. 54.

Crider estimated that she could stand or walk about ten minutes before her leg became numb. R. 48. She could sit about twenty minutes before needing to move. R. 53. She could lift about twenty pounds with her left arm, but only five or six pounds overall. R. 49, 53.

Medical records reflect that Crider sought emergency room treatment in May 2013 with complaints of right arm pain. R. 549. Upon examination, Esteban Olivera, M.D., observed normal range of motion in the spine with no tenderness or swelling. R. 550-51. A CT scan of the cervical spine revealed mild to moderate degenerative changes at C5-6 with significant right-sided neural foraminal stenosis. R. 554.

On January 17, 2014, an x-ray of Crider's ankle showed large calcaneal and plantar spurs. R. 297.

Dr. McCollum treated Crider from sometime before February 2014 through 2015. R. 338-49, 456-516. On February 4, 2014, Crider complained of neck pain, stiffness and tenderness, headache, and arm pain and numbness. Upon examination, Dr. McCollum found full range of

4

motion in all extremities. Her assessments included cervical degenerative disc disease based on a CT scan of the cervical spine from 2013, and peripheral neuropathy. R. 344-45. On May 5, 2014, Crider complained of worsening pain in the foot, back and neck. She reported that her moderate leg pain/numbness were somewhat relieved with medication. Upon examination, Dr. McCollum found full range of motion in the extremities. R. 338-39.

On August 14, 2014, Dr. McCollum prepared a Medical Assessment of Ability to do Work-Related Activities (Physical). She opined that Crider could sit fifteen to thirty minutes at a time with change of position every fifteen to thirty minutes. She could stand fifteen to thirty minutes, for a few hours total a day, and walk ten to fifteen minutes for one to two hours a day. She could lift/carry ten to twenty pounds occasionally. She wrote that left foot pain limited standing, walking and bending and that Crider could not push or pull due to neck pain and neuropathy. Crider's prognosis was poor. R. 368-69.

On August 25, 2014, Crider complained of back pain and stiffness and leg numbness. Upon examination, Dr. McCollum again found full range of motion in all extremities. R. 488-89. As of October 17, 2014, Crider had a normal gait. R. 482. On December 16, 2014, Crider complained of pain in her shoulder, headache, arm pain and numbness and worsening thoracic and radiating low back pain and stiffness. Dr. McCollum again noted full range of motion of all extremities with a normal gait. R. 463-65.

On February 25, 2015, Loc Kim Le, M.D., prepared a physical functional capacity assessment after a review of the records. Dr. Le opined that Crider could lift up to twenty pounds occasionally and up to ten pounds frequently. She could stand and/or walk and sit about six hours in an eight-hour workday. She could occasionally climb ramps/stairs, balance, stoop, kneel,

crouch, and crawl but never climb ladders/ropes/scaffolds. She should avoid all exposure to hazards. R. 85-88.

On January 7, 2015, an MRI of the lumbar spine revealed multilevel degenerative changes with no significant foraminal or spinal stenosis. R. 496-97.

On February 3, 2015, Anne I. Dunham, M.D., examined Crider on referral from Dr. McCollum. Crider complained of mid and low back pain and chronic neck pain. R. 562. Upon examination, Dr. Dunham observed some mild tenderness in the thoracic spine and tenderness in the sacrum and coccyx area. Crider's gait was abnormal secondary to a left ankle problem. A straight-leg raising test was negative for pain. The diagnoses were lumbar degenerative disc disease; coccydynia; thoracic degenerative disc disease; and chronic cervicalgia. Dr. Dunham administered an epidural steroid injection to address Crider's pain. R. 563. On March 3, 2015, Crider reported that injections decreased her coccyx pain, but she still complained of pain between the shoulder blades and numbness and tingling in the upper extremities. After review of a cervical MRI from 2012, Dr. Dunham diagnosed cervical degenerative disc disease; cervical stenosis; C5-6 herniated nucleus pulposus, small at C4-5; lumbar degenerative disc disease; coccydynia; and thoracic degenerative disc disease. She recommended cervical epidural steroid injections, which she subsequently administered. R. 560-64. On April 28, 2015, Crider told Dr. Dunham that her pain had improved after the injections, but she still reported numbness in her fingertips. R. 557. Dr. Dunham observed that Crider was "ambulating fluidly." *Id.*

On March 17, 2015, Crider was examined by Dr. McCollum. She complained of neck pain, stiffness and tenderness, pain in her shoulder blades, and right-sided arm pain with numbness. Upon

NOT FOR PUBLICATION

examination, Dr. McCollum observed tenderness in the cervical and lumbar spine. Crider had a normal gait and 5/5 grip strength. R. 532-33.

On April 17, 2015, Crider was examined by James W. Rust, D.P.M., for left ankle pain. The treatment note reflects that Crider previously had a calcaneal fracture. Upon examination, Dr. Rust noted no leg symptoms with exercise, no arthralgias and no swelling. He observed diffuse tenderness to palpation in the left ankle. His assessment was tenosynovitis of the ankle with osteoarthritis. He administered injections. R. 573-74.

In July 2015, Crider complained of sudden onset hip pain. R. 519. She also reported neck pain, joint pain, joint stiffness, foot pain and lower back pain. R. 520. An x-ray revealed signs of calcific tendinosis at the greater trochanter. R. 531. On July 16, 2015, Dr. McCollum observed on examination tenderness in the right hip joint and gluteus maximum but not in the greater trochanter and bursa. R. 520.

On August 27, 2015, x-rays of Crider's lumbar spine revealed mild degenerative changes at L3-4, suspected facet hypertrophy on the right at L5-S1, and an old compression fracture. R. 585-86.

Crider returned to Dr. McCollum on November 4, 2015 complaining of right hip pain. R. 579. Upon examination, Dr. McCollum observed good muscle strength and tone, normal range of motion in the extremities and a normal gait. She did note tenderness in the greater trochanter and bursa of the right hip with pain on abduction, but range of motion was full and motor strength was normal. Dr. McCollum noted that Crider was very active and taught aerobics several hours a week which was aggravating the problem. Dr. McCollum administered an injection to address Crider's complaints of pain. R. 583-84.

NOT FOR PUBLICATION

On November 17, 2015, Crider returned to Dr. McCollum complaining of right hip pain and lower back pain. She indicated that injections by Dr. Dunham helped with lower back and sacral pain and that injections by Dr. Rust resulted in slowly improving problems with her left foot. Upon examination, Dr. McCollum observed tenderness in the right hip and lumbosacral spine. R. 609-12.

On December 10, 2015, a MRI of the right hip revealed osteoarthritis, moderate-severity distal gluteus minimus tendinosis and peritendinitis, and a small right hip joint infusion. R. 647.

On January 11, 2016, Mark Gillespy, M.D., examined Crider due to complaints of lower back and right hip pain. Upon examination, Dr. Gillespy observed an antalgic and waddling gait. He did not find any tenderness in the lumbar spine and straight-leg raising tests were negative for pain. He noted tenderness in the right hip flexor muscle with 5/5 strength. Dr. Gillespy administered injections for pain. He noted that ultimately Crider might need a hip replacement. R. 636-37, 638-41.

During the hearing, the VE testified that that Crider's work at the roofing company would be classified as an administrative clerk, requiring a light level of exertion but a light to medium level of exertion as performed. R. 59. Her work at the fitness center would be classified as a manager of a recreational establishment, which required a sedentary level of exertion with a sit/stand option. R. 60. The ALJ asked VE to assume a hypothetical person of the age, education and work experience of Crider with the RFC the ALJ determined applied to Crider. *Id.* The VE testified that the hypothetical individual could perform the job of manager of a recreational establishment as performed. R. 61-63. The hypothetical person could also perform the job of

administrative clerk as generally performed. R. 61. During the hearing, Crider's attorney did not question whether these were composite jobs.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Crider raises two assignments of error. She contends that the ALJ erred in concluding that she could return to past relevant work because he failed to consider that these were "composite" jobs that had no counterpart in the *Dictionary of Occupational Titles* ("DOT"). She also argues that the ALJ erred by giving only some weight to the functional capacity assessment prepared by Dr. McCollum, a treating physician. She asks that the Court reverse the final decision of the Commissioner and remand the case for an award of benefits. These are the only issues I will address.

*Ability to Return to Past Relevant Work.*

A composite job is "one that has significant elements of two or more occupations and, as such, has no counterpart in the DOT." *Paxton v. Colvin*, No. 8:12-cv-583-T-TGW, 2013 WL 1909609, at * 4 (M.D. Fla. May 8, 2013). Counsel for Crider argues that the job of administrative assistant as defined in the DOT did not include the exertional work she performed when working at Shorty Crider Roofing, such as lifting and working on roofs. Counsel also contends that the DOT description of the job of manager of a recreational establishment does not coincide with Crider's work as an owner of a fitness center. Counsel does not show, however, how the additional work Crider performed in these jobs had significant elements of two or more occupations.

Even if these were composite jobs as defined by the SSA, the ALJ did all that he was required to do. Social Security Ruling 82-61 provides that composite jobs will be evaluated according to the particular facts of each individual case, and it may be necessary to use a VE to

9

determine how a particular job was usually performed. *Id.* The ALJ did exactly that. Crider testified about the work required in these jobs, and her testimony sufficiently developed the record regarding the demands of those jobs. The ALJ asked the VE to consider the evidence and to determine whether the hypothetical person could perform these jobs either as the job was usually performed or actually performed. The VE testified that Crider could perform her past work as manager of a fitness center as she actually performed it. The VE testified that Crider could perform the administrative duties of her past work with the roofing company as that job is generally performed.

The argument that the VE's testimony is flawed because he did not consider the other requirements of the jobs as Crider performed them fails. Social Security Ruling 82-61 provides as follows:

> A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61, 1982 WL 31387, at * 2 (SSA 1982). The VE found that Crider could perform the jobs he identified as generally required by employers with respect to the administrative clerk job and, therefore, the evidence is sufficient to establish that Crider could perform that job as generally performed.

Finally, it may be that Crider waived this argument by her counsel's failure to raise it in the ALJ's hearing. In *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001), *aff'd*, 31 F. App'x 202 (11th Cir. 2001), the Court determined that an argument not raised in an

administrative hearing before an ALJ in an SSA disability hearing cannot be raised on appeal. While there does not appear to be a consensus on this issue in the courts[2], the analysis in *Bechtold* provides another basis to support a conclusion that the first assignment of error is not meritorious. *See Avila v. Astrue*, No. 2:11-cv-400, 2012 WL 5831287, at *11 (N.D. Ind., Nov. 15, 2012) (finding that an issue not raised by counsel at the ALJ's hearing was untimely and did not provide grounds for remand).

For these reasons, I recommend that the Court find that Crider has not carried her burden of showing that she could not perform the job of administrative assistant as generally performed and the job of manager, recreational establishment as she actually performed it, assuming that this assignment of error has not been waived. Therefore, remand for further consideration of this issue is not required. *See, e.g., Smith v. Berryhill*, No. 8:12-cv-285-T-AAS, 2017 WL 6597507, at * 3 (M.D. Fla. Oct. 18, 2017).

*Opinion of Dr. McCollum.*

Dr. McCollum treated Crider from at least February 2014 through November 2015. She was, therefore, a treating physician whose opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation omitted). Crider argues that the ALJ erred by giving only some weight to Dr. McCollum's 2014 functional capacity assessment.

Good cause to give less weight to the opinion of a treating physician exists when (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's

---

[2] *See, e.g., Logan v. Barnhart,* 72 F. App'x 488, 491 (7th Cir. 2003).

medical records. *Id.* at 1240-41. In this case, Dr. McCollum's functional capacity assessment was not supported by her medical records.

The ALJ correctly found that Crider's physical examinations had been relatively unremarkable on multiple occasions and that Dr. McCollum's records reflected that Crider had full range of motion and no focal deficits (impairment of the nerve, spinal cord or brain function). R. 28. Before Dr. McCollum prepared her August 14, 2014 functional capacity assessment, her treatment notes reflected that Crider had full range of motion in her extremities with tenderness in the paraspinal muscles and over the anterior ankle and heel. R. 338-39, 344-34. After the functional capacity assessment was prepared, Dr. McCollum's treatment notes in 2014 continued to reflect full of range of in all extremities and a normal gait. *See, e.g.,* R. 463-65, 488-89.

Dr. McCollum's treatment notes from 2015 continue to reflect relatively unremarkable physical examinations. For example, in March 2015, Dr. McCollum noted that Crider had a normal gait and 5/5 grip strength. R. 532. In November 2015, Dr. McCollum observed good muscle strength and tone, normal range of motion in the extremities, a normal gait, and normal motor strength. Additionally, Crider was very active and teaching aerobics classes. R. 583-84. Crider also reported that her hip pain was not exacerbated by sitting. R. 579, 589, 595. Treatment with injections lessened pain in Crider's lower back, sacral area, and left foot. R. 609-12.

Accordingly, the ALJ articulated good cause for giving Dr. McCollum's functional capacity assessment only some weight, and his reasons are supported by substantial evidence in the record. Therefore, I recommend that the Court find that the second assignment of error is not well taken.

**RECOMMENDATION.**

For the reasons stated above, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**.  I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** this 11th day of June 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE